UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

_____

| | | |
|---|---|---|
| BOARD OF WATER WORKS TRUSTEES OF THE CITY OF DES MOINES, IOWA, | ) ) ) | Civil Action No. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| FEDERAL EMERGENCY MANAGEMENT AGENCY; W. CRAIG FUGATE, ADMINISTRATOR FEDERAL EMERGENCY MANAGEMENT AGENCY; DEBORAH INGRAM, ASSISTANT ADMINISTRATO R, RECOVERYDIRECTORATE, FEDERAL EMERGENCY MANAGEMENT AGENCY; BETH FREEMAN, REGIONAL ADMINISTRATOR, FEDERAL EMERGENCY MANAGEMENT AGENCY, REGION VII; NANCY RUDE, PUBLIC ASSISTANCE GROUP SUPERVISOR, IOWA CLOSEOUT CENTER, FEDERAL EMERGENCY MANAGEMENT AGENCY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) | |

_____

Plaintiff, Board of Water Works Trustees of the City of Des Moines, Iowa ("Des Moines

Water Works") states:

## NATURE OF ACTION

1.      This is an action for judicial review of final agency action under the

Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., and under declaratory  judgment under

28 U.S.C. § 2201, seeking injunctive and declaratory relief challenging decisions of officers of

the Federal Emergency Management Agency ("FEMA") acting in their official capacities.  The

1

decisions at issue were to "de-obligate" funds granted to Des Moines Water Works as sub-grantee to the Iowa Homeland Security and Emergency Management Division ("IHSEMD"), arising from a flood 2008,  that was declared by the President to be a natural disaster, by declaration DR 1763 IA .

2.      As will be more particularly set forth below Defendants lawfully exercised authority to make grants to Des Moines Water Works, pursuant to the Stafford Act, 42 U.S.C. §§ 5121-5204c, as set forth in Project Worksheets 9627, 10324, 10355, 10356, 10357, and 10366, copies of which are attached hereto as Exhibits 1, 2, 3, 4, 5, and 6 respectively (collectively the "Project Worksheets").

3.      After work had been commenced under the Project Worksheets and partially completed, FEMA erroneously, and without justification in law or regulation, revoked the grants by de-obligation as set forth in a decision dated April 18, 2011, that was issued to Defendant by Nancy Rude, Public Assistance Group Supervisor, Iowa Closeout Center of FEMA, a copy of which is attached as Exhibit 7.

4.      Des Moines Water Works appealed the de-obligation decision pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44 C.F.R. § 206.206.   The appeal was submitted through IHSEMD, which recommended its approval, but such appeal was denied by decision issued on December 16, 2011, by Defendant Regional Administrator of FEMA Region VII Beth Freeman, a copy of which is attached as Exhibit 8.

5.      Des Moines Water Works submitted a second Appeal pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44 C.F.R. § 206.206, through IHSEMD, which again recommended its approval, to the Assistant Administrator for the Response and Recovery Directorate of FEMA, but such appeal was denied by decision issued September 11, 2012, by

Defendant Deborah Ingram, Assistant Administrator Recovery Directorate, a copy of which is attached as Exhibit 9.  The decision states that the decision to de-obligate was an action necessary to correct an "error", and that the original approvals of the Project Worksheets were beyond the authority of FEMA.

6.      The action dated September 11, 2012 set forth in Exhibit 9 was by its terms, and by rule, final agency action.  Des Moines Water Works has exhausted all available administrative remedies.

7.      As will be shown more particularly herein, the original exercise of discretion by FEMA to approve the Project Worksheets was authorized by the Stafford Act and FEMA regulations, and the decisions to de-obligate funds and to affirm such de-obligation, including but not limited to funds necessary to reimburse Des Moines Water Works for work completed in full conformity with Project Worksheets before such de-obligation, are erroneous and not in accordance with applicable law.

8.      Further as will be shown more particularly herein, FEMA has no authority to de-obligate funds necessary to reimburse Des Moines Water Works for work completed in full conformity with Project Worksheets before such de-obligation.

9.      Further as will be shown more particularly herein, the de-obligation by FEMA of funds necessary to reimburse Des Moines Water Works for work completed in full conformity with Project Worksheets before such de-obligation is contrary to rights, powers, privileges or immunities secured to Des Moines Water Works under the Constitution of the United States and in particular deprives it of property without due process of law.

## PARTIES

10.      Plaintiff, Des Moines Water Works, is a municipal utility organized and existing under Chapter 388, Code of Iowa, with its principal place of business in the Southern District of Iowa.  It is a municipal entity and a "local government" as defined in Section 102 of the Stafford Act, 42 U.S.C § 5122(6).

11.      Defendant FEMA is an agency of the United States.

12.      Defendant W. Craig Fugate is the Administrator of FEMA, duly appointed, qualified, and acting as the administrative head of such agency and is responsible for its acts, including the decisions of the subordinate official named herein, and is sued in his official capacity.

13.      Defendant Deborah Ingram is the Assistant Administrator Recovery Directorate of FEMA and is sued in her official capacity.

14.      Defendant Beth Freeman is the Regional Administrator of FEMA, Region VII and is sued in her official capacity.

15.      Defendant Nancy Rude is the Public Assistance Group Supervisor of the Iowa Closeout Center of FEMA and is sued in her official capacity.

## JURIDICTION AND VENUE

16.      This action arises under the Stafford Act, 42 U.S.C. §§ 5121-5204c, and the Constitution of the United States, and presents a federal question over which the court has jurisdiction pursuant to 28 U.S.C. §1331.

17.      Venue of this action is proper in this district under the provisions of 28 U.S.C. § 1391(e) in that the Plaintiff resides in the Southern District of Iowa and a substantial part of the events giving rise to the claim in this action occurred in the Southern District of Iowa.

**FACTS**

18.     Des Moines Water Works is a water utility that provides service to retail and wholesale customers in the Des Moines metropolitan area.

19.     Des Moines Water Works supplies critical drinking water and emergency response water to over 400,000 customers in the Des Moines area.

20.     Des Moines Water Works has, and maintains, facilities for collection of raw water, treatment of raw water into finished water, and distribution of finished water to wholesale and retail customers.  The facilities of Des Moines Water Works include two water treatment plants located in Polk County, the Fleur Drive Water Treatment Plant, and its new Saylorville Water Treatment Plant ("Saylorville WTP"), and as well as a third plant, the McMullen Water Treatment Plant, formerly known as the Maffitt Water Treatment Plant ("McMullen WTP"), partly located in Polk County, Iowa and partly located in Dallas County, Iowa.  The Saylorville WTP and the McMullen WTP are together referred to as the "Water Treatment Plants."

21.     The Water Treatment Plants each include facilities for collection of raw water in the form of collector wells and related facilities, which were the subject of the Project Worksheets (the "Collector Wells").

22.     The Collector Wells collect shallow alluvial water extracted from a river by means of an integrated system of well houses, caissons, laterals, and supporting equipment and naturally existing alluvial silts, sands and gravels ("Alluvial Materials") that hydraulically connect river waters to the alluvial aquifer and the man-made collection elements.

23.     In the case of the McMullen WTP, the Collector Wells are located near the bank of, and collect alluvial water indirectly from, the Raccoon River in Dallas and Polk County, and in the case of the Saylorville WTP they are located near the bank of, and collect alluvial water

indirectly from the Des Moines River in Polk County.  In the case of  McMullen WTP, there are

back-up sources of water in the form of the Maffitt Reservoir and a former gravel pit called

"Crystal lake" that is used as a source of low nitrate water in times of  high nitrate concentration

in the Raccoon River.

24.     The components of these facilities—including the soils composing the

riverbank—are all integral parts of the Des Moines Water Works' water collection system.

25.     The creation of the facilities at issue here began with a detailed geotechnical study

of the riverbank areas in their natural state at each location and continued with the design,

construction, and calibration of functioning raw water collection and treatment systems that were

engineered to specifically adapt the riverbank areas for exploitation as raw water collection sites

using riverbank filtration.

26.     The installation and operation of collector wells based on riverbank filtration is a

recognized technique that modifies, improves and adapts a riverbank aquifer for use to collect

high quality raw water for treatment.

27.     Raw water is collected within the Collector Wells by means of perforated

cylindrical screens, called laterals, that are inserted into the Alluvial Materials under, through,

and surrounding the riverbanks.

28.     The Alluvial Materials located between the Collector Well laterals and the rivers,

including those within the riverbanks, provide filtration and support biogeochemical reactions

that improve the quality of the infiltrating water as the water passes through the Alluvial

Materials to the point in the alluvial aquifer where it is drawn into the wells.

29.     The individual wells within the well-field then act together to serve as a raw water collection system that provides effective pretreatment of the raw water if sufficient Alluvial Materials are present between the laterals and the river.

30.     The Alluvial Materials are an essential component of the overall raw water collection system and the water treatment process at the McMullen WTP and the Saylorville WTP.

31.     The location and design of the well caissons and laterals, including screen opening sizes, lengths, depth, and orientation, were undertaken with intimate knowledge of the underlying Alluvial Materials gleaned from extensive soil borings, which were analyzed for such things as character of the materials, grain size distribution, and uniformity to aid in the engineering design of the Collector Well systems.

32.     The data on the composition of the Alluvial Materials was utilized to determine the location of the collector well elements and the number of wells required to achieve the desired yield from the well field.  The engineering design of each well was predicated on the existing site characteristics, but the natural features were not functional for raw water collection until the structural elements were inserted.

33.     The Collector Wells were placed in locations designed to optimize the efficacy of the integrated systems using riverbank filtration, which of necessity place them near the rivers from which water is derived through riverbank filtration.

34.     The structural elements of the Collector Wells were strategically placed, designed, constructed, and developed to yield sufficient quantities of raw water with the requisite quality after extensive geotechnical and hydrological study.

35.     The design of the Collector Wells also balanced the location of structural elements away from future erosion and flood risks against the need to place collection structures in locations that were suitably productive of raw water of sufficient quality and quantity.

36.     By installing the Collector Wells, the Des Moines Water Works obtained substantial and measurable improvements in the quality of its raw water obtained over that which could have been obtained by direct river intake.

37.     The designs of the Water Treatment Plants in turn depended on these improvements to meet quality standards, including state and federal drinking water safety requirements.

38.     Use of riverbank filtration in raw water collection provides pathogen removal, and reduction of turbidity, natural organic matter, nitrates and other impurities.  This in turn reduces the treatment requirements and costs for chemicals including activated carbon, ferric chloride and potassium permanganate for removal of turbidity and reduction in organics for taste and odor control.  An expensive treatment process, like ion exchange, was not required due to the reduced nitrate concentration in the riverbank filtered water versus direct river water.

39.     By design, the Collector Wells were matched to the Water Treatment Plants, and vice versa.

40.     Structural support and a margin of safety for such support for the Collector Well systems and related infrastructure was a part of the design and was provided by the distance between the riverbank and various structural elements and by bank protection as considered necessary.

41.     The alternative to the Collector Wells would have been a direct river intake for the McMullen WTP and Saylorville WTP.  The capital costs of such facilities would have been

8

significantly less than the costs of constructing eight radial collector wells for the two Water Treatment Plants, but the Des Moines Water Works expended the larger costs to construct the Collector Wells to reap the benefit of riverbank filtration and the improved raw water quality realized from that filtration.

42.     The improved water quality realized from riverbank filtration allowed the Des Moines Water Works to delete the process of pre-sedimentation treatment at both plants.  That process would have included construction, operation, and maintenance of a physical pre-sedimentation basin and the chemicals required for that process including activated carbon, ferric chloride and potassium permanganate.

43.     The improved water quality provided by riverbank filtration also reduced the requirement for nitrate removal process during those times of year when nitrate concentrations in the river are above the drinking water standard.

44.     The riverbanks and the underlying alluvial materials are an integral element of the Collector Wells and in turn an integral element of the Water Treatment Plants.

45.     The riverbanks in the areas of the Collector Wells were improved by the installation of the Collector Wells.

46.     The riverbanks in the areas of the Collector Wells were also improved as a part of their installation by means of a  standard process known as "development" which modifies the previously existing natural state of the sands and gravels around the laterals.  The goals of rigorous development process were to remove the fine sand from the area around and near the laterals and to stratify the larger sands and gravels to provide the best yield from the laterals.

47.     The result of the "development" as described was a measurable increase in quantitative yield of each of the Collector Wells.

9

48.     The installation of the wells and the development of the laterals also improved the filtration capability of the Alluvial Materials.  Pumping the water from the alluvial aquifer lowers the level of water in the aquifer.  The lower water level in the aquifer creates more hydraulic head between the river water level and the water level in the aquifer which allows for more water to flow through the Alluvial Materials, increasing and thus improving the filtered yield.

49.     The riverbanks in the areas of the Collector Wells at the McMullen WTP were also improved by installation of riverbank protection.

50.     The need for riverbank protection at the McMullen WTP was evaluated prior to construction of the treatment plant, and the riverbanks in the areas of the Collector Wells at the McMullen WTP were improved by installing artificial stabilization where a need was determined to exist.

51.     The stabilization was installed by separate projects undertaken in 1997 and 1999. This included placement of engineering fabric and rip rap along the outside bends of the riverbanks at the McMullen WTP where erosion was expected as shown in the drawing attached as Exhibit 10.

52.     In the case of the Saylorville plant, which was still early in the process of construction at the time of the 2008 Flood, riverbank stabilization had not yet been installed, but the process of planning for installing rip rap had begun before the flood at issue.

53.     The riverbank protection design strategies took into account conditions as they existed pre-flood.  There was no need to protect the riverbanks where little to no normal erosion was expected, until the 2008 flood radically altered the terrain.  The riverbanks were not so perfectly protected as to be impervious to all flood damage, but the previously existing

protections worked as designed to protect and preserve the structural elements of the Collector Wells prior to the catastrophic loss in 2008.

54.     As a matter of policy, the Des Moines Water Works is committed to maintaining its facilities and systems in a state of good repair, including the Collector Wells and Water Treatment Plants.

55.     The Des Moines Water Works regularly and consistently maintains the Collector Wells, and all of its integral components, including the riverbanks, so that they perform as designed.

56.     The improvements made at the McMullen WTP and the Saylorville WTP, including the Collector Wells are, and have been, in actual and unimpaired use to effectively produce the desired end product of a reliable high-quality water supply.

57.      Des Moines Water Works has historically practiced a performance standard of maintaining infrastructure to provide continuous service for an untold number of future years and has applied that standard at the McMullen WTP over a number of years, and to the more recently completed Saylorville WTP since its completion.  This has included the riverbanks at McMullen WTP and Saylorville WTP, which have been maintained as needed to assure the Collector Wells perform as designed, which they continue to do.

58.     Maintenance has included the riverbank protection projects at McMullen in 1997 and 1999, as well the emergency work completed after the 2008 flood, and has also included regular surveillance, monitoring, and repair.

59.     The McMullen WTP came on line in 2000 and the Saylorville WTP came on line in 2010.  Each has been continuously and systematically maintained.

60.     The Collector Wells themselves received a significant amount of maintenance.  In the initial years of operation at the McMullen WTP some of the wells produced a large quantity of sand which accumulated in the well caissons.  The level of this sand in the caissons was monitored on a regular basis and the wells were taken off line so the sand could be removed when the accumulation became too great.

61.     The Collector Wells also receive operational evaluations on a regular basis.  This is accomplished by shutting down one well at a time in turn and noting the reduction in total well flow during the period of time when each well is off line.  This information, in addition to information on river level and water temperature, is collected by the Des Moines Water Works control center operators and provided to the supervisor of operations who shares it with others across the utility, so the data can be used to evaluate changes in well yield, the need for "re-development" of the wells, or other maintenance actions.

62.     The Collector Well systems at both the McMullen WTP and Saylorville WTP are visited on a weekly basis by a maintenance mechanic.  Each of these weekly visits includes a visual inspection and observation of the grounds, riverbanks, facilities, and equipment at each site.    The mechanical elements of the collector well systems are regularly maintained to keep them in good condition and the surrounding grounds and riverbanks are similarly maintained as needed.  Des Moines Water Works staff make frequent general observations of the riverbank areas through the weekly visits.

63.     At the McMullen WTP, the areas immediately surrounding the well houses and caisson are mowed.  Rodents have been eradicated to control burrowing damages.  Roads have been repaired and tree limbs removed.

64.     Similar activities have been or will be conducted at Saylorville, subject to the requirements unique to that site which is occupied under an easement with the United States Corps of Engineers, which imposes specific maintenance obligations.

65.     In 2008, Iowa experienced severe flooding resulting in the declaration of a federal declaration of disaster, DR 1763- IA, for areas that included Polk County and Dallas County (the "2008 Flood Disaster").

66.     The 2008 Flood Disaster caused a severe loss of river bank and underlying alluvial sands and gravels which formed a part of the Collector Wells at the Saylorville WTP and McMullen WTP.

67.     The amounts of river bank material lost in the  2008 Flood Disaster were:

| PW # | 10357 | 10355 | 9627 | 10324 | 10356 | 10366 |
|---|---|---|---|---|---|---|
| Well # | McMullen 1 | McMullen 3 | McMullen 4 | McMullen 5 | McMullen 6 | Saylorville 1 |
| Riverbank Material Lost | 46 feet | 24 feet | 2 feet | 49 feet | 25 feet | 9    feet |

68.     The loss of riverbank also resulted in loss of trees and vegetation.  Twenty-one (21) trees were lost at McMullen Well 3 (PW 10355) ranging in diameter from fifteen (15) inches to thirty (30) inches.  At McMullen Well 5 (PW 10324), twenty-eight (28) trees, ranging in diameter from fifteen (15) inches to thirty-six (36) inches, were lost.

69.     At Collector Wells 3 and 5, no trees were left standing between the wells and the river which left no natural vegetative protection against future erosion.

13

70.     The loss of trees was a significant loss of natural vegetative protection for the river bank material.  The root systems for the trees provided an anchoring system for the river bank material thus providing natural protection for the river bank material from erosion.  With the loss of this natural protection, the Collector Wells were exposed to a much greater potential of erosion from future flood events.

71.     The lost riverbank ground and materials were integral elements of functioning Collector Well systems that are in turn are essential to the Water Treatment Plants as a whole.

72.     The loss of riverbank material directly reduced the thickness and quantity of the Alluvial Materials between the rivers and the collector laterals, thus reducing inherent filtering capacities of the material that is required to surround the collector well laterals in order to provide the minimum filtration needed for removal of contaminants and pathogens as the water is drawn through the Alluvial Materials by the wells.

73.     The loss of Alluvial Materials also reduced the previously existing distances between river and man-made facility elements so that previously existing margins of safety for structural support and filtering capability, and capacity to absorb future loss of bank distances and Alluvial Materials were reduced.

74.     By moving the river closer to the structural elements, the flood damaged the security of the structural elements that had been previously provided by distance to the river.

75.     The damage to the riverbanks, including the loss of trees and other natural elements that had previously served to anchor the riverbanks, rendered the previously provided natural and artificial stabilization measures inadequate.

76.     The damage to the riverbanks increased the risk and impact of possible future flood events at each location.

14

77.     The loss of river banks and trees and their root systems  was such as to create conditions of immediate threat, in the event of future floods, of damage to the facilities including man-made elements such as well houses, caisson, laterals, electrical transformers, and buried electrical lines and water lines at the Collector Wells.

78.     The risks at McMullen Well #3 and Well #5  were particularly severe and exposed the structural  elements there to damage in  any future flood event regardless of severity.

79.     Each such well is a part of a larger collection system.  Each well pumps into a common raw water transmission main.  The necessary electrical circuits and communication/control circuits that allow proper individual well operation are loop-fed and thus extend between neighboring well locations.  Damage or loss at one site can likely impact the operation of neighboring wells.  Damage or loss at two wells sites would be likely to disables all wells at the site.  Thus, the high risk at McMullen Well #3 and Well #5 threatened the entire system of Collector Wells at McMullen, and the entire McMullen WTP.

80.     Following the 2008 Flood Disaster Des Moines Water Works was contacted by, and first worked with, FEMA in December 2008.

81.     FEMA suggested that Des Moines Water Works might be eligible for funding for damages that were caused by the 2008 Flood Disaster.

82.     After gathering data on the Collector Wells, assessing the damages, and touring the sites, eligibility was initially questioned by FEMA because generally a mere riverbank protection project would not be eligible without some additional showing.

83.     Des Moines Water Works subsequently received an email from FEMA on February 5, 2009 requesting Des Moines Water Works contact Mr. Russell Colon about soil erosion over water lines and the wells on the Raccoon River, which was done.

84.     In follow-up meetings after that email, discussions centered on the well system's function and importance to Des Moines Water Works' systems supplying critical water to customers, and the function of the lost river bank as a part of an integrated raw water collection system.

85.     After taking all of these considerations into account, it was decided by FEMA that a basis for eligibility existed.

86.     FEMA staff led the effort to generate the Project Worksheets and Stanley Consultants, Inc. ("Stanley") acted as a consultant to the Des Moines Water Works to develop project designs.  IHSEMD also played a role as the direct grantee from FEMA.

87.     Ultimately, the full application and design process was extensive and included detailed submission by the Des Moines Water Works which revealed all of the relevant facts, a full review of the Collector Wells, and an analysis of the cost and benefits of the proposed work in comparison to alternatives.

88.     During the application process, FEMA staff suggested that the proposed project be expanded by a small amount of work to be done at Well 4 at the McMullen WTP as a part of the larger overall project, and this resulted in PW 9627.

89.     The submissions included analysis not only of damage to the Collector Wells, but also a consideration of the existence of immediate threats.

90.     In a letter regarding Supporting Data for FEMA Project Worksheets for McMullen Raw Water Well #5, dated 9/1/09, Stanley Consultants, Inc. stated "During the flood event of 2008, an estimated 44 feet (of river bank material) was lost.  At this rate, the well house will be consumed by the river channel within two to three years."

16

91.     In a letter regarding Supporting Data for FEMA Project Worksheets for McMullen Raw Water Well #3, dated 9/23/09, Stanley Consultants, Inc. stated "During the flood event of 2008, an estimated 12-25 feet (of river bank material) was lost.  At this rate, the well house will be consumed by the river channel within two to three years."

92.     In a letter regarding Supporting Data for FEMA Project Worksheets for McMullen Raw Water Well #1, dated 9/23/09, Stanley stated "During the flood event of 2008, an estimated 20-50 feet (of river bank material) was lost.  If the bank continues to erode towards the Crystal Lake impoundment, the lake will become directly connected to the river and operations of the plant will be greatly impacted.  The Crystal Lake impoundment is a critical component of the operations at the McMullen Treatment Plant.  During periods of low river nitrate levels, water is pumped into the lake.  During periods of high river nitrate levels, water is pumped from the lake to the treatment plant to lower the raw water nitrate concentrations.  Without this reservoir, during times of high river nitrate levels, the McMullen plant would be required to shutdown or issue nitrate warnings to the public."

93.     In the design process, various alternatives were considered and it was decided that full restoration of the lost river banks was neither practical nor needed. It was determined that reshaping the banks with installation of an overlay of engineering fabric and rip rap would provide a combination of adequate functionality, sufficient replacement of previously existing margins of protection, and mitigation of immediate threats.

94.     The Project Worksheets for the McMullen WTP reflect a systematic evaluation and response to the impact of the 2008 Flood Disaster on the McMullen WTP and Saylorville WTP, and the Collector Wells viewed as functioning systems.

95.     The Project Worksheets took into account the overall picture, which included not only the most threatened elements such as McMullen Wells 3 and 5, but also a larger restoration and response to the effect of the flood on the overall systems.

96.     Project Worksheets 9627, 10324, 10355, 10356, 10357, and 10366 were ultimately approved with IHSEMD as grantee and the Des Moines Water Works as sub-grantee.

97.     In approving the Project Worksheets, FEMA decided that the projects were not merely river bank protection projects, but rather were needed to restore pre-disaster function and capacity and that the work approved by the Project Worksheets had the effect of mitigating immediate threats of future damage to the raw water collections systems by flooding.

98.     For example, as stated in Project Worksheet 10357 at page 4, "During this flood event, 5 out of the 6 caisson well houses (a critical component for providing raw water supply) and pumps became in danger of an 'immediate threat' and significant additional damage which can be reasonably expected to occur within five years as defined under the provision of 44 CFR 206.221(c)."  (Exhibit 5).

99.     FEMA determined in each of the obligated Project Worksheets that the projects, as proposed, would be more cost effective than relocation of the wells to prevent damage from future flood events or other alternatives considered.

100.    Des Moines Water Works understood that it had a binding commitment from FEMA as long as the work was completed within the scope of the Project Worksheets that FEMA had obligated.

101.    Des Moines Water Works then proceeded to implement the projects in conformity with the Project Worksheets, including obtaining necessary permits and approvals, preparation of detailed plans and specifications, and the letting of contracts in accordance with applicable law

for Iowa public improvements.  The obligated Project Worksheets were the basis for Des Moines

Water Works entering into contracts to have the requisite work completed.

102.   Although there was "immediate threat" to all of the Collector Wells, the threat to

Wells 3 and 5 at the McMullen WTP was particularly urgent, and required protective measures

without delay.  Each well facility would cost approximately $3 million to replace and Des

Moines Water Works did not want to risk losing either of these most threatened wells due to

failure to take precautions without delay.

103.   Des Moines Water Works decided it should not delay the most urgent parts of the

work at McMullen Wells 3 and 5 by following its regular contracting process for public

improvements, so Des Moines Water Works asked FEMA if it could complete some emergency

repairs at these two wells.  Des Moines Water Works wanted to be sure the emergency repairs

did not jeopardize the obligated Project Worksheets.

104.   On March 25, 2010, Des Moines Water Works received notification from FEMA

regarding emergency repairs at wells 3 and 5 that, if a required emergency permit or written

waiver was obtained, there would be no jeopardy to federal funding.

105.   It was the understanding of the Des Moines Water Works that the cost of the

emergency work would be included as a part of the closeout of the applicable Project

Worksheets.

106.   On March 26, 2010, FEMA e-mailed to Des Moines Water Works a FEMA

Environmental/Historic Preservation (EHP) preliminary review for the emergency repairs.  This

provided conditions that Des Moines Water Works would need to follow in order to maintain

eligibility for FEMA funding.  Conditions were described under the Clean Water Act;

Endangered Species; National Historic Preservation Act (NHPA); Executive Order

11988:  Floodplain; Executive Order 11990:  Wetlands; and Statutory Exclusion (STATEX).

The conclusion from FEMA was that the "scope of work in this project qualifies as a statutory

exclusion (STATEX) under 44 CFR Part 10; EHP review is based upon replacement of facility

to pre-disaster condition.  The Applicant must obtain all required federal, state, and local

permits."

107.     All required permits for the emergency work were obtained by Des Moines Water

Works, and such work was commenced and completed in April, 2010 at a cost of $181,077.39.

108.     On June 10, 2010, Des Moines Water Works was advised that the Iowa

Department of Natural Resources ("IDNR") would not allow the use of granular fill material as

was set forth in the original designs, which had been approved by FEMA.  Such granular fill

material would be considered "earth fill".  Class D riprap was allowable as fill material in place

of granular fill as originally designed.  The basis for this was Iowa Administrative Code (IAC)

571-13.7(2) (b) and IAC 571–13.3.

109.      Under these rules IDNR requirement applied to the Des Moines River in Polk

County, where Saylorville Well 1 (PW 10366) is located, and the Raccoon River in Polk County,

where McMullen Wells 1 and 4 (PWs 10357 and 9627) are located.  It did not apply to the

Raccoon River west of the Polk County/Dallas County line where McMullen Well 3, 5, and 6

(PWs 10355, 10324 and10356), respectively, are located.

110.     The result of application of the IDNR rules to the Project Worksheets was that a

redesign was required for the Polk County portions of the projects, but not for the Dallas County

portions.

111.    The Polk County portions of Collector Wells thus had a state imposed requirement to make a change in the work previously approved in Project Worksheets 10357, 9627, and 10366, which would result in additional cost.

112.    The Des Moines Water Works awarded a contract for the work at the McMullen WTP on September 28, 2010 and a contract for the work at the Saylorville WTP on November 23, 2010.

113.    Work then commenced at the McMullen WTP on the Dallas County portions of the work that were not affected by the Iowa DNR requirements (PWs 10355, 10324, 10356). However, before authorizing work to proceed on the changed requirements for Wells 1 and 4 (PWs 10357 and 9627) at the McMullen WTP and Well 1 (PW 10366) at the Saylorville WTP, the Des Moines Water Works submitted an application to FEMA through IHSEMD for an approved change to the applicable Project Worksheets to allow riprap material in lieu of granular fill in conformity with DNR requirements for PWs 10357, 9627, and 10366.

114.    After such application, on December 16, 2010, the Des Moines Water Works met with IHSEMD.  The Des Moines Water works was informed by IHSEMD that it had been informed by FEMA that approval for changes to the project Worksheets would not be given, and that de-obligation of all funds under all of the Project Worksheets was under consideration.

115.    As of that time contracts for all remaining work had been let, and the contractor at the McMullen WTP was on the job.

116.    Immediately thereafter Des Moines Water Works suspended further work, pending further notification by FEMA, but by that date work at Wells 3, 5 and 6 at the McMullen WTP (PWs 10355, 10324 and 10356) was essentially complete.

117.    Through IHSEMD staff, Des Moines Water Works requested an opportunity to meet with FEMA staff to discuss the possible de-obligation before a decision was made.

118.    The request was initially denied but ultimately a meeting was held at FEMA's Des Moines offices.  Staff from FEMA, IHSEMD, Iowa Department of Natural Resources and Des Moines Water Works attended this meeting on February 24, 2011.

119.    At the meeting, Des Moines Water Works staff provided more information to FEMA staff for their use in re-considering the previous obligation of the subject Project Worksheets.  Des Moines Water Works staff was asked to provide the following further information: (a) the minimum amount of riverbank material required at each well site to provide the desired riverbank filtration between the river water and the well water (filtrate); and (b) the amount of riverbank material lost at each well site, each year since the wells were constructed. No issue was raised that the riverbank material did not qualify as a "facility" eligible for FEMA funds.

120.    Des Moines Water Works retained Barr Engineering Company to conduct modeling of the McMullen and Saylorville well-fields to provide the information concerning minimum filtration thickness needed.

121.    Barr Engineering completed their work and generated a Technical Memorandum dated March 23, 2011.  In the Conclusions and Recommendations section of the memorandum, Barr Engineering states "we consider the repaired condition of the Maffitt Reservoir [McMullen WTP] Well-Field as proposed in the current plans and specification to provide the **minimum** amount of riverbank material required."  This same statement was made for the Saylorville site.

122.    Des Moines Water Works staff utilized satellite imagery to develop drawings for each well to provide the other information requested.

123.    On March 24, 2011 Des Moines Water Works submitted all additional information requested and attached the Barr Engineering Technical Memorandum and the drawings of the well sites to IHSEMD for submission to FEMA.

124.    The information provided by the Des Moines Waters Works after the Project Worksheets were approved, simply augmented the facts previously submitted which demonstrated that the lost riverbank constituted a part of a public facility and also demonstrated existence of an immediate threat.  The original obligated Project Worksheets reflect a detailed consideration of these matters.

125.    On April 18, 2011 FEMA issued its decision to de-obligate funds for all six Project Worksheets, Exhibit 7.  First and second appeals were denied within FEMA as set forth in Exhibit 8 and Exhibit 9.

126.    The Des Moines Water Works is adversely impacted by the de-obligation decision as affirmed by FEMA upon administrative appeal. The following is a list of the six Project Worksheets with their description, obligated amounts, dollar values of completed work and  expenditure,  and amounts of  funds received to date:

| PW # | Description | Obligated Amount | Amount of Work Completed | Funds Received to Date |
|---|---|---|---|---|
| 10357 | McMullen Well 1 | $1,511,644.48 | $0.00 | $0.00 |
| 10355 | McMullen Well 3 | $1,166,483.32 | $719,768.66 | $422,869.49 |
| 9627 | McMullen Well 4 | $93,853.64 | $0.00 | $0.00 |
| 10324 | McMullen Well 5 | $2,096,940.72 | $966,201.12 | $596,457.82 |
| 10356 | McMullen Well 6 | $679,058.09 | $393,502.52 | $265,672.69 |
| 10366 | Saylorville Well 1 | $2,047,386.83 | $97,087.93 | $0.00 |

| Totals | | $7,595,367.08 | $2,176,560.24 | $1,285,000.00 |
|---|---|---|---|---|

The figures for work completed at McMullen Wells 3 and 5 include emergency work as described above.

## CLAIMS FOR RELIEF

## COUNT I
## FIRST CLAIM FOR RELIEF

**THE LOSS OF RIVERBANK GROUND TO THE FLOOD OF 2008 DAMAGED SYSTEMS, WORKS, AND IMPROVED GROUND THAT QUALIFIED AS A "FACILITY."**

127.    The Des Moines Water Works re-alleges paragraphs 1-126 above and incorporates them in this Count I by reference.

128.    Pursuant to 44 C.F.R. § 13.21(g)(1) once FEMA obligated funds under the Project Worksheets,  it was obligated and required to  disburse funds to Des Moines Water Works unless there was a violation of the conditions of the grant.

129.    The decision to de-obligate funds previously obligated, including funds necessary to reimburse Des Moines Water Works for work completed in full conformity with Project Worksheets before such de-obligation, is not consistent with FEMA's governing statutes, regulations and policies because the work approved was required to restore "public facilities" from damage caused by a declared disaster.

130.    Section 206.201(c) of FEMA's regulations defines "facility" as "any publicly or privately owned building, works, system, or equipment, built or manufactured, or an improved and maintained natural feature." 44 C.F.R. § 206.201(c)

131.    A "public facility" is defined in Section 102 of the Stafford Act, 42 U.S.C § 5122 and 44 CFR 206.221(h) to include any "water supply and distribution … facility."

24

132.     The meaning of the term "facility" is explained in the FEMA Assistance Guide,

which states at  p. 22:

A facility is defined as:

- any publicly or PNP-owned building, works, system, or equipment; or
- certain improved and maintained natural features.

The improvement of a natural feature should be based on a documented design
that changes and improves the natural characteristics of the feature.  Examples of
such improvements include soil stabilization measures (such as terracing),
channel realignment, and channel bank armoring for erosion control.  The non-
structural portions of public golf courses may be considered facilities.

Examples of improvements that do not qualify as eligible facilities include
agricultural lands and planted trees and shrubs.

Upon completion of an improvement, a subsequent measurable difference in the
performance over the unimproved natural feature should be shown.  The
maintenance of this improvement must be done on a regular schedule and to
standards to ensure that the improvement performs as designed.  It is the
improvement itself that must be maintained for the natural feature to be
considered a facility.

133.     Each of the water treatment plants of the Des Moines Water Works, viewed in

totality, is a "facility" as a "works" and as a "system" that was built or manufactured.

134.     Each of the individual components of the water treatment plants, including the

Collector Wells, individually and collectively, is also a "facility" as a "works" or a "system" that

was built or manufactured.

135.     The lost riverbank ground was an integral element of functioning Collector Wells

that are in turn essential to the Water Treatment Plants as a whole.  The riverbank areas

contained material utilized by those wells to provide riverbank filtration of river water to provide

pre-filtered water as a raw water supply for water treatment plants pursuant to documented

designs.

25

136.    The riverbanks into which the collector well systems are imbedded are also a "facility" as an "improved or maintained natural feature".

137.    The riverbank areas had in fact been improved and adapted to be more useful than they would be in their natural state in one or  more of the following particulars:

(a) The documented designs of the McMullen WTP and Saylorville WTP included use of Collector Wells near and under the riverbanks to obtain measurably better quality of raw water by means of riverbank filtration;

(b) The riverbanks are the site of Collector Wells which use the riverbank material for raw water filtration after it has been improved by insertion of laterals and by the process of conditioning known as development.  As a result of such improvements, a measurable difference in the performance over the unimproved natural feature was obtained.

(c) After the collector well elements were installed for the McMullen WTP and Saylorville WTP, the area surrounding the wells became a part of an engineered system designed to provide the desired quality and quantity of water for each Water Treatment Plant.

(d) The Collector Wells, as designed, functionally depended on the riverbank material in the area of the wells and the installation and operation of a collector well actually modified the characteristics of the surrounding aquifer.

(e) The riverbanks at McMullen WTP were stabilized with rip rap as needed, adding a measurable degree of added protection.

(f)  The riverbanks here form a crucial piece of a complex system of components.  The riverbanks are an integral part of the related collector wells, and are an essential component in a larger system.

(g)  The modifications to the natural features made by the installation and development of the collector wells added to the utility of the property for the purposes of its intended use.

138.   The riverbank areas as improved were also maintained so as to perform the functions for which they were improved.

139.   The significant loss of riverbanks due to the flood in areas that had been improved by installation of riverbank collector wells constituted damage to "facilities" consisting of one or more, or all, of the following elements:

(a) The Water Treatment Plants as a whole;

(b) The Collector Well Systems, individually or collectively, or both; or

(c) The ground improved by the installation and development of the Collector Wells, by "development", and by installation of riverbank protection.

140.   The original Project Worksheets reflected a thorough technical review of the facts and circumstances and a finding that the Des Moines Water Works was eligible for the requested assistance because of flood damage to the collector well systems and were an exercise of discretion in full conformity with applicable laws and regulations.

141.   The original finding of eligibility was correct because the collector well "system" at each site is a "facility" and each such facility was directly damaged by the flood, without regard to whether or not the lost riverbanks were "improved and maintained".

142.    The original finding of eligibility was also correct because the riverbank areas that were lost to the flood were not raw land, but were an "improved and maintained natural feature".

143.    The eligible facilities of the Des Moines Water Works suffered injury due to the floods of 2008. The flood directly damaged the Collector Wells by reducing previously existing riverbank filtration capacity, by reducing or eliminating margins of safety of riverbank stability and structural support for constructed elements, by destroying previously existing natural riverbank protections, and by otherwise increasing exposure to future flood and erosion risk.

144.    These damages to Eligible Facilities required remediation that was eligible for assistance as found in the Project Worksheets.

145.    The decision to de-obligate funds, as affirmed at the highest level of appeal within FEMA, was based on the legal conclusion that the Project Worksheets were beyond the authority of FEMA and was required by law to be set aside because there was no damage to a "facility" as defined in the FEMA regulations.

146.    Such decision was not in accordance with law because the riverbanks that were lost were part of a "system" or "works" constituting a "facility" or alternatively each in itself was a "facility" because they were improved and maintained natural features.

147.    Thus, the Des Moines Water Works was eligible for assistance as approved in the original Project Worksheets, the de-obligation decisions are not in accordance with law.

148.    FEMA has acted in excess of its statutory and constitutional authority in the above respects and particulars, and in an arbitrary and capricious manner, and will, unless restrained by this court, proceed with enforcement of the decision to de-obligate grants to Des Moines Water Works.

149.    Des Moines Water Works will suffer loss and injury as set forth herein.

150.     Des Moines Water Works has fully complied with all procedural requirements of FEMA, including appeals pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44 C.F.R. § 206.206, and no further right of review or appeal or other remedy is available to plaintiff before FEMA or its officers.

151.     Pursuant to 5 U.S.C. § 706,  and 28 U.S.C. §2201,  Des Moines Water Works seeks, and is entitled to:

(a) Judicial review of the decision to de-obligate funds granted to Des Moines Water Works by the Project Worksheets in whole or in part; and

(b) Declaratory relief finding such agency action to be arbitrary, capricious and otherwise unlawful; in excess of statutory jurisdiction and authority; or contrary to constitutional right, power, privilege or immunity, in whole or in part; and

(c) Injunctive and other injunctive relief compelling Defendants to withdraw and rescind the de-obligation decision of April 18, 2011, in whole or in part.

## COUNT II
## SECOND CLAIM FOR RELIEF

**THE LOSS OF RIVERBANK GROUND TO THE FLOOD OF 2008 CREATED A CONDITION OF "IMMEDIATE THREAT".**

152.     The Des Moines Water Works re-alleges paragraphs 1-151 above and incorporates them in this Count II by reference.

153.     Pursuant to 44 C.F.R. § 13.31(g)(1) once FEMA obligated funds under the Project Worksheets,  it was obligated and required to  disburse funds to Des Moines Water Works unless there was a violation of the conditions of the grant.

154.     The decision to de-obligate funds previously obligated, including funds necessary to reimburse Des Moines Water Works for work completed in full conformity with Project

29

Worksheets before such de-obligation, is not consistent with FEMA's governing statutes, regulations and policies because the work approved was eligible for funding as protective measures to alleviate the "immediate threat" of a five-year probable event as defined in 44 CFR §206.221(c) which was created by the damage wrought by the 2008 Flood.

155.    The 2008 Flood Disaster removed riverbank areas that served as a buffer between structural elements and the river and also removed sand and gravel thickness needed to assure adequate filtration capacity.  The flood also removed significant amounts of natural vegetative protections that had previously existed.  At Collector Wells 3 and 5 (PW 10355 and PW 10324), no trees were left standing between the wells and the river.

156.    After the 2008 Flood Disaster there was no further margin of safety for the structural integrity and filtering capacity of the Collector Wells.

157.    As a result, the 2008 Flood Disaster created an immediate jeopardy of future flood damage, whatever the severity of the future flood.

158.    Alternatively, a five-year flood event would be expected to overflow the banks of the Raccoon River at McMullen and such an event would be likely to cause the total loss of Wells 3 & 5 under the circumstances that existed after the flood of 2008, absent the protective measures funded by the Project Worksheets.

159.    The Project Worksheets found that an "immediate threat" of further damage to a public facility under 44 C.F.R. § 206.221(c).

160.    The decision to de-obligate funds, as affirmed at the highest level of appeal within FEMA, was based on the legal conclusion that the Project Worksheets were beyond the authority of FEMA and were required by law to be set aside because there was no "immediate threat" as defined in the FEMA regulations.

161.    Such decision was not in accordance with law because the original finding of immediate threat was correct.

162.    Thus, Des Moines Water Works was eligible for assistance as approved in the original Project Worksheets.

163.    FEMA has acted in excess of its statutory and constitutional authority in the above respects and particulars, and in an arbitrary and capricious manner, and will, unless restrained by this court, proceed with enforcement of the decision to de-obligate grants to Des Moines Water Works.

164.    Des Moines Water Works will suffer loss and injury as set forth herein.

165.    Des Moines Water Works has fully complied with all procedural requirements of FEMA, including appeals pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44 C.F.R. § 206.206, and no further right of review or appeal or other remedy is available to plaintiff before FEMA or its officers.

166.     Pursuant to 5 U.S.C. § 706,  and 28 U.S.C. §2201, Des Moines Water Works seeks, and is entitled to:

(a)  Judicial review of the decision to de-obligate funds granted to Des Moines Water Works by the Project Worksheets in whole or in part; and

(b)  Declaratory relief finding such agency action to be arbitrary, capricious and otherwise unlawful; in excess of statutory jurisdiction and authority; or contrary to constitutional right, power, privilege or immunity, in whole or in part; and

(c)  Injunctive and other injunctive relief compelling Defendants to withdraw and rescind the de-obligation decision of April 18, 2011, in whole or in part.

## COUNT III
## THIRD CLAIM FOR RELIEF

**THE RETROACTIVE APPLICATION OF THE DE-OBLIGATION DECISIONS IS EXCEEDS FEMA'S AUTHORITY**.

167.     The Des Moines Water Works re-alleges paragraphs 1-166 above and incorporates them in this Count III by reference.

168.     Funds originally approved under the Project Worksheets were later de-obligated after significant work was completed based on a subsequent decision that (1) the properties damaged by the flood were not eligible "facilities" and (2) the Des Moines Water Works facilities did not face an "immediate threat."

169.     Such decision was not based on any error or inaccuracy of any information provided by the Des Moines Water Works, or any failure of the Des Moines Water Works to comply with the terms of the Project Worksheets.

170.     The Des Moines Water Works has acted in good faith and in complete conformity with approved Project Worksheets.

171.     FEMA has no authority by statute or rule to retroactively rescind funding granted under a Project Worksheet after work has been performed as authorized by the Project Worksheet by a grant recipient that has acted in good faith and in complete conformity with an approved Project Worksheet.

172.     FEMA has acted in excess of its statutory and constitutional authority in the above respects and particulars, and will, unless restrained by this court, proceed with enforcement of the decision to de-obligate grants to Des Moines Water Works.

173.     Des Moines Water Works will suffer loss and injury as set forth herein.

174.    Des Moines Water Works  has fully complied with all procedural requirements of

FEMA, including appeals pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44

C.F.R. § 206.206, and no further right of review or appeal or other remedy is available to

plaintiff before FEMA or its officers.

175.    Pursuant to 5 U.S.C. § 706,  and 28 U.S.C. §2201, Des Moines Water Works

seeks, and is entitled to:

(a) Judicial review of the decision to retroactively de-obligate funds granted to Des

Moines Water Works by the Project Worksheets for work previously performed;

(b) Declaratory relief finding such agency action to be arbitrary, capricious and otherwise

unlawful; in excess of statutory jurisdiction and authority; or contrary to

constitutional right, power, privilege or immunity; and

(c) Injunctive and other injunctive relief compelling Defendants to withdraw and rescind

the de-obligation decision of April 18, 2011, as applied retroactively.

## COUNT IV
## FOURTH CLAIM FOR RELIEF

## THE RETROACTIVE APPLICATION OF THE DE-OBLIGATION DECISIONS DEPRIVES THE DES MOINES WATER WORK OF PROPERTY WITHOUT DUE PROCESS OF LAW.

176.    The Des Moines Water Works re-alleges paragraphs 1-175 above and

incorporates them in this Count IV by reference.

177.    The decision to rescind funding granted under a Project Worksheet after work had

been performed as authorized by the Project Worksheet by Des Moines Water Works  acting in

good faith and in complete conformity with an approved Project Worksheets deprives the Des

Moines Water Works of property without due process of law.

178.    FEMA has acted in violation of the Constitution of the United States in the above respects and particulars, and will, unless restrained by this court, proceed with enforcement of the decision to de-obligate grants to Des Moines Water Works.

179.    Des Moines Water Works will suffer loss and injury as set forth herein.

180.    Des Moines Water Works has fully complied with all procedural requirements of FEMA, including appeals pursuant to Section 423, of the Stafford Act, 42 U.S.C. § 5189a and 44 C.F.R. § 206.206, and no further right of review or appeal or other remedy is available to plaintiff before FEMA or its officers.

181.    Pursuant to 5 U.S.C. § 706, and 28 U.S.C. §2201, Des Moines Water Works seeks, and is entitled to:

(a) Judicial review of the decision to retroactively de-obligate funds granted to Des Moines Water Works by the Project Worksheets for work previously performed;

(b) Declaratory relief finding such agency action to be contrary to constitutional right, power, privilege or immunity; and

(c) Injunctive and other injunctive relief compelling Defendants to withdraw and rescind the de-obligation decision of April 18, 2011, as applied retroactively.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Board of Water Works Trustees of the City of Des Moines, Iowa prays that:

A.    This Court review the decision to de-obligate funds granted to Des Moines Water Works by the Project Worksheets and declare such agency action to be arbitrary, capricious and otherwise unlawful; in excess of statutory jurisdiction and authority; or contrary to constitutional right, power, privilege or immunity, in whole or in part; and

34

B.      That this Court immediately issue, or as soon as the matter can be heard, its order

staying the de-obligation decision pending trial and until ultimate judgment in this

action; and

C.      That final injunction issue compelling Defendants to withdraw and rescind the de-

obligation of April 18, 2011, in whole or in part; and

D.      That the Des Moines Water Works recovers its costs as provided by law and its

attorney fees pursuant to 28 U.S.C. §2412(b) to the extent applicable; and

E.      That the Court issue such other declaratory, injunctive, or equitable relief as the Court

may find proper.


Dated: December 17, 2012


_____/s/ Richard A. Malm_____
RICHARD A. MALM, AT 0004930
JOHN E. LANDE, AT0010976
DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
699 Walnut Street, Suite 1600
Des Moines, IA 50309
Telephone:  515.244.2600
Facsimile:  515.246.4550
rmalm@dickinsonlaw.com
jlande@dikcinsonlaw.com

ATTORNEY FOR PLAINTIFF BOARD OF WATER
WORKS TRUSTEES OF THE CITY OF DES MOINES,
IOWA